**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION**

| | |
|---|---|
| **JULIAN RUBIO and JENNIFER RAMOS, Individually and as Representatives of the ESTATE OF ARMANDO W. RUBIO, DECEASED,** § § § § § | |
| Plaintiffs, § | CIVIL ACTION NO. _____ |
| § | |
| v. § | |
| § | |
| **JONES COUNTY, TEXAS** § | |
| § | |
| Defendant. § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiffs Julian Rubio and Jennifer Ramos, both Individually and as Representatives of the Estate of Armando W. Rubio, deceased ("Decedent" or "Mr. Rubio"), and hereby file this Original Complaint against Defendant Jones County Texas ("Jones County" or "Defendant"). In doing so, Plaintiffs respectfully show the Court the following:

### I.
#### SUMMARY

1.01   Plaintiffs claims arise out of the inadequate medical care provided to Armando W. Rubio during his pre-trial detention in the Jones County Jail from approximately June 7, 2021 to August 3, 2021. Jones County violated Mr. Rubio's constitutional rights under the Fourteenth Amendment to the United States Constitution by acting with deliberate indifference to his medical needs that resulted in unnecessary or wanton infliction of pain and ultimately, his death.

1.02   Jones County Jail Personnel were aware of Mr. Rubio's severe asthma condition that required a daily prescription corticosteroid and multiple inhalers. Yet, for nearly two months,

Mr. Rubio was denied his daily prescription medications. Mr. Rubio, Plaintiff Jennifer Ramos, and other inmates repeatedly informed Sheriff Danny Jimenez and Jail Personnel of his struggle to breath and requested his medications be administered to help control his asthma. These requests were consistently ignored. A brief timeline below illustrates a small portion of the requests for medical treatment that were repeatedly ignored:

| | |
|---|---|
| June 21, 2021: | Mr. Rubio made two medical requests, one to 2nd shift and one to 3rd shift Jail Personnel, these requests were ignored; |
| June 23, 2021: | Mr. Rubio made two more medical requests and was told they were out of forms; |
| June 24, 2021: | Mr. Rubio made a medical request to each shift of Jail Personnel and requested treatment, these requests were ignored; |
| June 25, 2021: | Mr. Rubio requested to see the nurse for his medications and was ignored; |
| June 29, 2021: | Mr. Rubio was finally allowed to see the nurse after prior medical requests were ignored and nurse was never notified; |
| June 30, 2021: | Ms. Ramos complains about Mr. Rubio needing his steroid on a daily basis and had not received it for 23 days; |
| July 7, 2021: | Mr. Rubio made a medical request for inhaler and breathing treatment, these were ignored; |
| July 22, 2021: | Mr. Rubio made a request for treatment and was threatened with a taser by Jail Personnel if he continued to press the emergency button and request help; |
| July 23, 2021: | Mr. Rubio's O2 saturations were at 90%[1] and his fingertips were purple; his medications were still denied; |
| August 2, 2021: | Ms. Ramos had made seven (7) calls to the jail and left messages for the nurse, per Sheriff Jimenez' instructions, about Mr. Rubio's condition, nothing was done, and he died the next day. |

---

[1] This is considered evidence of a severe asthma condition that is indicative of a hypoxic state.
https://www.medicalnewstoday.com/articles/asthmatic-oxygen-levels#blood-oxygen-levels

1.03   Upon information and belief, pre-trial detainee Scott Munoz was housed with Mr. Rubio for approximately 10-11 days. He personally made several requests to Jail Personnel after witnessing Mr. Rubio panic and struggle to breathe on multiple occasions. Mr. Munoz personally observed Mr. Rubio put in numerous medical requests for his medications, which were ignored.

1.04   Upon information and belief, pre-trial detainee Andy Flores, Jr. was housed with Mr. Rubio from July 19 - August 17, 2021. While with Mr. Rubio, Mr. Flores personally requested medical help for Mr. Rubio after observing his struggle to breathe on multiple occasions. These requests were delayed, ignored outright, and on at least one occasion Officer Mata and Officer Cardena threatened him and others with a taser if they continued to press the emergency button requesting help for Mr. Rubio.

1.05   In the late evening on August 2, 2021, Mr. Rubio was transported to Anson General Hospital where he collapsed and died in the early hours of August 3, 2021. An autopsy, performed by the Tarrant County Medical Examiner's Office, determined the primary cause of death was asthma. As such, Defendant were deliberately indifferent to his basic medical needs, which resulted in substantial harm—i.e., his death.

## II.
## PARTIES

2.01   Plaintiff Julian Rubio is a citizen and resident of Haskell, Haskell County, Texas. Mr. Rubio is the biological son Armando W. Rubio, deceased.

2.02   Plaintiff Jennifer Ramos is a citizen and resident of Anson, Jones County, Texas. Ms. Ramos was the wife of Armando W. Rubio, deceased.

2.03   Defendant Jones County, Texas is a political subdivision of the State of Texas located in the Northern District of Texas. Jones County, Texas can be served through its County

Judge, Dale Spurgin, at 100 Courthouse Square, Anson, Texas 79501, or wherever he may be found.

## III.
### VENUE AND JURISDICTION

3.01 Jurisdiction exists in this Honorable Court pursuant to 28 U.S.C. §§1331 and 1334 as this action is brought pursuant to 42 U.S.C. § 1983 for violations under the Fourteenth Amendment right of the Decedent Armando W. Rubio. The amount of relief sought exceeds the jurisdictional limits of this Court.

3.02 Supplemental jurisdiction of this Court is proper pursuant to 28 U.S.C. §1367 to adjudicate pendent state law claims.

3.03 Venue is proper in the Northern District of Texas—Abilene Division, pursuant to 28 U.S.C. §1391 because all or a substantial part of the causes of action accrued in the Northern District of Texas—Abilene Division. Plaintiffs would show that the incident made basis of this suit occurred wholly within Jones County, Texas, which is within the Northern District, Abilene Division.

## IV.
### FACTUAL BACKGROUND

4.01 Armando W. Rubio, age 40, suffered from a life-long severe asthma condition. Controlling his asthma required a daily corticosteroid prescription (oral prednisone pill), allergy medication, and multiple inhalers.

4.02 On or about June 7, 2021, Armando W. Rubio was confined to the Jones County Jail in Anson, Jones County, Texas on a motion to revoke his probation. Mr. Rubio is well-known

in Jones County,[2] and this was not his first stint in the Jones County Jail. Sheriff Danny Jimenez knew Mr. Rubio personally and his wife is a cousin to Ms. Ramos. Defendant were aware of his severe asthma condition and daily need for prescription medications both prior to and upon his arrival on June 7, 2021.

4.03    Upon information and belief, Mr. Rubio repeatedly informed Defendant of his struggle to breathe and repeatedly requested his prescription asthma medications, which were consistently ignored and denied during his nearly two-month stay. The only medical care provided to him during his stay were infrequent and delayed Albuterol breathing treatments, which were inadequate to manage his severe asthma condition. Additionally, Mr. Rubio's wife, Jennifer Ramos, as well as other inmates housed with Mr. Rubio, made repeated requests for Mr. Rubio to receive medical treatment, including the specific administration of his prescription medications. The requested were repeatedly ignored.

4.04    Upon information and belief, Mr. Rubio and other inmates repeatedly pressed the emergency button in their cells in an attempt to get Mr. Rubio help as he struggled to breathe. On at least one occasion, inmates were threatened by Jail Personnel with a taser if they continued to press the button requesting help for Mr. Rubio. During those instances, the requests for adequate medical care were ignored and/or denied.

4.05    In the late evening on August 2, 2021, Mr. Rubio was transported to Anson General Hospital where he collapsed and died in the early hours of August 3, 2021. An autopsy performed by the Tarrant County Medical Examiner's Office determined the primary cause of death was asthma.

---

[2] The 2020 census showed the Jones County Population at 19,663. Jones County Pre-Trial Jail houses approximately twenty (20) male inmates. www.prisonroster.com/prisons/texas/county-jail/jone-county-jail-5/

4.06     Defendant failures to provide adequate medical care to Mr. Rubio violated his constitutional rights under the Fourteenth Amendment to the United States Constitution and those failures proximately caused his death. Under 42 U.S.C. §1983 Defendant is liable for damages resulting from the death of Armando W. Rubio while under its care and supervision.

## V.
## VIOLATIONS OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. §1983 AGAINST JONES COUNTY

5.01     Plaintiffs, reassert and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

5.02     At all relevant times, Decedent was a pre-trial detainee during his confinement in the Jones County jail.

5.03     At all relevant times, Defendant was operating under the color of state law.

5.04     The Fourteenth Amendment to the U.S. Constitution protects pretrial detainees right to adequate medical care. Defendant's actions described herein were objectively unreasonable in light of the law that was clearly established at the time of Mr. Rubio's detention and the time leading up to his death.

5.05     Defendant violated Mr. Rubio's constitutional right to adequate medical care in the following non-exhaustive ways:

    a.   repeated failures to meet his basic human needs by denying him his prescription steroid medication;

    b.   repeated failures to meet his basic human needs by denying him his prescription inhalers;

    c.   repeated failures to meet his basic human needs by denying him his prescription allergy medication;

    d.   repeated failures to adequately monitor him;

  e. failing to adequately train Jail Personnel to recognize and respond to the basic needs of Mr. Rubio and his medical condition;

  f. deliberately ignoring repeated requests for basic medical treatment as he struggled to breathe;

  g. threatening unnecessary and excessive use of force with the use of a taser for continuing to request medical treatment for his basic human needs; and

  h. other failures, acts, or omissions yet to be discovered.

5.06 Defendant's failure to monitor Mr. Rubio's medical condition and failure to provide prescription medications over the course of nearly two-months give rise to a conditions-of-confinement claim.

5.07 Defendant's failure to respond to Mr. Rubio's complaints of not being able to breathe and needing his medications give rise to an episodic-acts-or-omissions claims via the unconstitutional conduct of Defendant and individual policymakers, including Sheriff Jimenez, through county-wide policies, practices, and/or customs that deprived Mr. Rubio of his constitutional rights. Such policy was the moving force behind his death.

5.08 Defendant, including county policymakers, disregarded an extreme and excessive risk to Mr. Rubio's health and safety. Defendant failed to provide Mr. Rubio with adequate medical care, despite the fact that Defendant knew he was suffering and struggling to breathe as a result of not receiving adequate medical care to treat his severe asthma. In doing so, Defendant deliberately denied proper care.

5.09 Defendant's actions in failing to administer life-sustaining prescription medication for nearly two months constitutes punishment in violation of Mr. Rubio's Fourteenth Amendment rights, and Defendant's actions served no legitimate penological or administrative goal and were not reasonably related to any legitimate governmental objective.

5.10   Defendant had subjective knowledge of the substantial risk of serious harm to Mr. Rubio and responded to that risk with conscious indifference by ignoring request for medical treatment and deliberately refusing to administer life-sustaining medication that proximately caused Decedent's death.

5.11   Defendant's interactions with Mr. Rubio make it reasonable that Defendant was actually aware of his medical condition and need for daily prescription medications, both prior to and during his detention from June 7, 2021 until his death on August 3, 2021. Furthermore, based on Defendant's actual awareness of his condition it is reasonable to infer Defendant knew Mr. Rubio faced a substantial risk of serious harm if he did not receive his prescription medication.

5.12   Defendant had a policy, practice, and/or custom that violated Mr. Rubio's rights. Defendant had individual policymakers, including Sheriff Jimenez as the policy maker responsible for Jones County Jail. These county policymakers adopted and/or executed official policies and/or *de-facto* policies, and these policies were violations of Mr. Rubio's constitutional rights whose moving force was the policy and/or custom.

5.13   Actual and or constructive knowledge of the policy is attributed to the Jones County governing body and/or to officials, including Sheriff Jimenez, to whom Jones County had delegated policy making authority.

5.14   The official polices were policy statements, ordinances, regulations, and/or decisions that were officially adopted and promulgated by the Jones County officers and/or by officials to whom Jones County delegated policymaking authority, including Sheriff Jimenez.

5.15   The official policies were persistent, widespread practices of Jones County officials and/or employees, which, although not authorized by officially adopted and promulgated policy,

were so common and well-settled as to constitute a custom that fairly represents a Jones County policy.

5.16 As of August 2, 2021, these policies, practices, and/or customs that caused the constitutional violations included:

a. failing to provide procedures for the distribution of prescription medications in accordance with written instructions from a physician by an appropriate person designated by the sheriff/operator;

b. failing to follow all medical instructions of designated physicians;

c. failing to have separate health records that shall reflect all subsequent findings, diagnoses, treatment, disposition, distribution of medications, and the name of any institution to which the inmate's health record has been released;

d. not maintaining Medical Administration Records of medications dispensed to inmates;

e. failing to have documented face-to-face observation of all inmates by jailers no less than once every 60 minutes;

f. intentionally and/or deliberately not furnishing adequate medical care to inmates with known medical conditions;

g. failing to adequately staff the Jail with staff to observe pre-trial detainees; and

h. failing to train staff to recognize pre-trial detainees suffering from a serious medical condition.

5.17 Defendant is culpable for Defendant's unconstitutional policies and/or practices and there is a direct causal link between the policies and constitutional deprivations to Mr. Rubio. The policies were unconstitutional and/or promulgated with deliberate indifference to the known and/or obvious consequences that constitutional violations would result to Mr. Rubio.

5.18    Defendant, including individual policymakers like Sheriff Jimenez, had subjective awareness of Mr. Rubio's serious medical condition and the need for daily prescription medications in order to control his asthma.

5.19    Defendant, including individual policymakers like Sheriff Jimenez, should have known about Mr. Rubio's asthma and the risk of serious injury or death in the absence of adequate medical treatment, given the facts and circumstances surrounding official policies and the impact on Mr. Rubio's rights.

5.20    Defendant, including individual policymakers like Sheriff Jimenez, is liable under 42 U.S.C. §1983 for its treatment of its inmates through the unconstitutional conduct for episodic-acts-or-omissions through county-wide policies, practices, and/or customs that deprived Mr. Rubio of his constitutional rights.

5.21    By subjecting Mr. Rubio to these extreme conditions-of-confinement, resulting in injury and death, specifically punishing a pre-trial detainee by depriving him of medical care with full knowledge of the dangerousness of his condition, Defendant and the county policymakers, including Sheriff Jimenez, acted with deliberate indifference to Mr. Rubio's constitutional rights and serious health and safety needs, in violation of the Fourteenth Amendment to the U.S. Constitution. Defendant's refusal to provide adequate medical care caused Mr. Rubio injuries and an untimely death.

5.22    Defendant and the county policymakers, including Sheriff Jimenez, knew about Mr. Rubio's serious medical condition and nevertheless consciously disregarded the extreme and excessive risks to Mr. Rubio's health and safety. Defendant knew or should have known that certain treatment was necessary for Mr. Rubio, and Defendant refused and/or delayed in providing such treatment when Defendant should have reasonably known that such refusal and/or delay can

be hazardous. Defendant intentionally and deliberately did not give Mr. Rubio his medicine and he died. Defendant and county policymakers, including Sheriff Jimenez, consistently and deliberately denied Mr. Rubio medical care, even after requested by Mr. Rubio, his wife, and other inmates during his stay in Jones County Jail leading to his death on August 3, 2021.

5.23 Defendant abdicated a constitutionally required responsibility to attend to Mr. Rubio's medical needs and Defendant knew of and disregarded an excessive risk to a pre-trial detainee's health and/or safety.

5.24 Defendant is responsible for making sure that its practices and policies do not endanger the lives of the detainees under Defendant's care. Despite knowing that many detainees suffer from serious medical conditions that require ensuring the daily administration of prescription medications, Defendant failed to implement and enforce policies for reasonable medical care.

5.25 Defendant was subjectively aware of the danger their actions posed to pre-trial detainees in Mr. Rubio's condition and they were deliberately indifferent to the serious medical needs of prisoners like Mr. Rubio and their actions were a proximate cause of Mr. Rubio's death.

## VI.
### DAMAGES

6.01 As a proximate result of the acts of Defendant described above, Plaintiffs Julian Rubio as the surviving biological son of Armando W. Rubio, and Jennifer Ramos as the surviving spouse of Armando W. Rubio, as statutory beneficiaries under the Wrongful Death Statute, are entitled to bring this suit and recover all damages that each has suffered as a result of the wrongful death of Armando W. Rubio pursuant to Section 71 of the Texas Civil Practice and Remedies Code (the "Wrongful Death Statute"). Such wrongful death damages include Plaintiffs' pecuniary loss,

meaning the loss of care, maintenance, support, household services, advice, counsel and reasonable contributions of pecuniary value that would, in reasonable probability, have received from Armando W. Rubio had he lived; Plaintiffs' loss of companionship and society, meaning the loss of the positive benefits flowing form the love, comfort, companionship, and society that they would, in reasonable probably, have received from Armando W. Rubio had he lived; Plaintiffs' mental anguish, meaning the emotional pain, torment, and suffering experienced by Plaintiffs because of the death of Armando W. Rubio and Plaintiffs' loss of inheritance resulting from the death of Armando W. Rubio. Plaintiffs bring this claim on behalf of all statutory beneficiaries.

6.02   Plaintiffs also seek to recover all damages under the Texas Survival Statute, including medical, funeral and burial expenses, pain and suffering, and mental anguish of Armando W. Rubio before his death.

## VII.
## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

7.01   Plaintiffs claim pre-judgment and post-judgment interest at the maximum rate allowed by law.

## VIII.
## JURY DEMAND

8.01   Plaintiffs respectfully request that the Court impanel a jury to decide all fact issues in this case.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant be cited to appear and answer this Complaint and that upon final hearing, Plaintiffs recover judgment against Defendant for their damages as they appear at trial hereof together with costs of court, prejudgment and post-judgment interest, and for such general and equitable relief as Plaintiffs may be entitled.


Respectfully Submitted,

*/s/ James L. Mitchell*
**JAMES L. MITCHELL**
State Bar No. 14214300
Jim@PayneMitchell.com
**ANDREW S. BULLARD**
State Bar No. 24104622
abullard@paynemitchell.com
**PAYNE MITCHELL RAMSEY LAW GROUP**
3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
214/252-1888 Telephone
214/252-1889 Facsimile

ATTORNEYS FOR PLAINTIFF